**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ACTIAN CORPORATION, | Case No. 5:25-cv-08914-BLF |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO DISMISS** |
| ITRON, INC., | [Re: ECF No. 15] |
| Defendant. | |

Plaintiff Actian Corporation ("Actian") filed a complaint against Defendant Itron, Inc. ("Itron") for copyright infringement, breach of contract, and negligence. ECF No. 1 ("Compl."). Itron now moves to dismiss. ECF No. 15 ("Mot."); ECF No. 25 ("Reply"). Actian opposes the motion. ECF No. 22 ("Opp."). The Court heard argument on March 26, 2026. ECF No. 31; *see also* ECF No. 33 ("Tr.").

For the reasons stated on the record and described below, the motion is GRANTED.

## I.    BACKGROUND

This action arises from a series of software licensing agreements entered between the Parties. Actian is a software company that develops technologies for data management and analytics, including a "database management system" known as Pervasive PSQL and Actian Zen (the "Software"). Compl. ¶ 2. The Software, which is protected by several copyright registrations, is used in packaged software applications and used by original equipment manufacturers ("OEMs") for implementation in various business solutions requiring database management. *Id.* ¶¶ 2, 28. Itron is a technology company that supplies technology and software that enables energy and water utilities to create, monitor, receive, and send data from "smart grids" built on its technology. *Id.* ¶ 4. Since approximately 2007, Itron has used the Software in support

United States District Court
Northern District of California

of three of its software packages for distributed data management: MV-RS, MV-90, and Itron Enterprise Edition ("IEE") (collectively, the "Itron Products"). *Id.* ¶¶ 5, 23.

During this time period, Actian has provided Itron with access to the Software for use in connection with the Itron Products, with Itron having licensed over 1,356 copies of the Software from Actian and its predecessor. Compl. ¶¶ 2–3, 27. Access to the Software is provisioned through various End User License Agreements ("EULAs")—contracts that govern all installations and uses of the Software—which users must review and affirmatively accept before installing the Software. *Id.* ¶ 3. Actian alleges that the EULA for Version 14 of the Software is exemplary of the relevant terms and conditions of the software license agreements but avers that in the complaint that its claims against Itron also involve EULAs for Versions 8, 9, 10, 11, 12, 13, and 15 of the Software. *Id.* ¶¶ 2–3, 29; *see also id.* Ex. A ("V14 EULA"). The EULAs provide that copies of the Software are licensed (rather than sold) and that all intellectual property rights associated therewith remain with Actian. *Id.* ¶ 39.

The EULAs provide that use of the Software is limited according to the type of license purchased, with options ranging from single-user licenses to server licenses. *See* Compl. ¶ 31. Among options for server licenses, Actian offers an expansive "Vx Server License," which entitles the purchaser to provide Software access to many users, including through "a Software as a Service ["SaaS"] or Application Service Provider ["APS"] or multiplexing and pooling models," and a more restrictive "Server Edition License," which does not include these functionalities. *Id.* ¶¶ 31, 34 (internal quotation marks omitted). The authorized uses for the Vx Server License are set forth in the EULAs as follows:

> Vx Server Edition License Grant. Conditioned on Your compliance with the terms and conditions of this Agreement, if You have properly purchased a license to the Vx Server Edition, Actian grants to You a nonexclusive, nontransferable, nonsublicensable and revocable right to (i) use the Vx Server Edition on the number of Servers purchased under a Vx Server Edition Multi-Server License; or if a Vx Server Edition Multi-Server License is not purchased, on a single Server, and in any event subject to the total Data in Use purchased pursuant to a Capacity-based License; and (ii) use the Client Software and Documentation in connection with Your use of the Vx Server Edition. Notwithstanding anything to the contrary in this Agreement, there are no restrictions on use of the Vx Server Edition as a "software as a service", in an application service provider environment, and/or on the Internet or Intranet or by multiplexing . . . .

United States District Court
Northern District of California

V14 EULA § 2.1(c). Unlike the case with the Vx Server License, the Server Edition License cannot be used for multiplexing or any other operation "in a service bureau, SaaS, ASP, or other similar hosted environment." V14 EULA § 4.2. The authorized uses for the Server Edition License are set forth in the EULAs as follows:

> Server Edition License Grant. Conditioned on Your compliance with the terms and conditions of this Agreement, if You have properly purchased a license to the Server Edition, Actian grants to You a nonexclusive, nontransferable, non-sublicensable and revocable right to (i) use the Server Edition on a single Server; (ii) use the Client Software and Documentation in connection with Your use of the Server Edition; and (iii) with respect to a Server Edition Concurrent User License, permit a total number of Concurrent Users that is not greater than the User Count to simultaneously access and use the Server Edition. Under Server Edition Concurrent User Licenses, You may use the Server Edition solely for Your internal business purposes. If You cannot accurately track the number of Concurrent Users accessing the Server Edition under the Concurrent User License and maintain appropriate Records in accordance with Section 11.6 below, then You must purchase a Vx Server Edition License.

V14 EULA § 2.1(a).

Actian alleges that it discovered that "Itron used, reproduced, and distributed copies of the Software without authorization from Actian and outside the scope of any valid underlying license" sometime in late 2024, when an Itron project manager made an inquiry to an Actian representative to procure licenses for a small number of copies of the Software. Compl. ¶¶ 6, 7. According to Actian, after questionnaire responses by the Itron project manager revealed that Itron had been "hosting applications for third parties and . . . distributing copies of the Software to third parties" without the correct license (i.e., the Vx Server License), Actian executed its right under the EULAs to demand an audit of Itron's records and systems, which Itron refused. *Id.* ¶¶ 8–9; *see also* V14 EULA § 11.6(ii) (setting forth licensor's right to conduct audits of licensees).

After Itron refused to compensate Actian for the alleged unlicensed distribution of the Software or enter negotiations for such a license, Actian initiated this action "to prevent and seek remedy for wrongful actions by Itron against Actian on a massive scale." Compl. ¶¶ 11–13. In the complaint, Actian alleges a number of "exemplary wrongful acts" by Itron, including deploying "the Software" on Microsoft's Azure cloud hosting platform (the "Microsoft Platform"), "distributing copies of the Software to third parties," using the Software "in a

3

commercial, revenue-generating deployment," violating restrictions on the number of concurrent users, and refusing to permit Actian to undertake a usage audit. *Id.* ¶¶ 44–49. Actian contends that these wrongful actions amount to breach of contract (count one of the complaint), direct copyright infringement (count two), indirect copyright infringement (counts three and four), and negligence (count five). *Id.* ¶¶ 53–102.

## II.     LEGAL STANDARD

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A defendant may move to dismiss an action pursuant to Rule 12(b)(6) for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ashcroft*, 556 U.S. at 678).

For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court is not, however, required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. "Such allegations are not to be discounted because they are 'unrealistic or nonsensical,' but rather because they do nothing more than state a legal conclusion—even if that conclusion is cast in the

United States District Court
Northern District of California

form of a factual allegation." *Moss*, 572 F.3d at 969 (quoting *Ashcroft*, 556 U.S. at 681)

If the Court determines that the complaint should be dismissed, it must then decide whether to grant leave to amend. Although Federal Rule of Civil Procedure 15(a) gives the trial court discretion over this matter, the Ninth Circuit has explained that leave to amend "should be freely granted when justice so requires," bearing in mind that "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (first alteration in original) (first quoting Fed. R. Civ. P. 15(a), then quoting *Noll v. Carlson,* 809 F.2d 1446, 1448 (9th Cir. 1987)). "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." *Eminence Capital, L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). In deciding whether to grant leave to amend, the Court considers the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital*. The Ninth Circuit in *Eminence Capital* identified several factors to consider, including (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, and (5) futility of amendment. 316 F.3d at 1052.

## III. DISCUSSION

Itron argues that each of Actian's five causes of action in the complaint fail to state a claim on which relief may be granted.

### A. Copyright Infringement

Actian's second cause of action is for copyright infringement based on Itron's "ongoing reproduction, distribution, and use" of the Software, which Actian argues is unlicensed and outside the scope of any license previously granted to Itron. Compl. ¶ 61; *see also id.* ¶¶ 59–69. Actian's third and fourth causes of action are for contributory and vicarious copyright infringement, respectively, based on Itron's users' and licensees' alleged unauthorized use of the Software. *See id.* ¶¶ 70–80, 81–91.

Itron argues that Actian fails to state a claim for copyright infringement because the complaint alleges at most only violations of covenants included in the EULAs (rather than

United States District Court
Northern District of California

violations of license conditions), such that any recovery is limited to a claim for breach of contract. Mot. at 6–10. Itron further contends that, even if Actian's copyright claims were to survive the motion, Actian's request for attorneys' fees on those claims must be dismissed because the complaint does not allege that Actian registered its copyright within the earlier of three months after first publication or one month after learning of infringement. *See id.* at 12 (citing 17 U.S.C. § 412). Actian responds that it has sufficiently pleaded that Itron "exceeded its license by reproducing and distributing copies of the Software directly" and using "the Software for Saas, multiplexing, or pooling." Opp. at 5 (citing Compl. ¶¶ 31–35, 45–46). As to attorneys' fees, Actian contends that "[w]hether Itron commenced any acts of infringement after the earliest date of any of the Copyrights[] . . . is a fact question that cannot be resolved at this stage." *Id.* at 10.

Ordinarily, a copyright owner who grants a nonexclusive, limited license may not claim copyright infringement for breaches of the license agreement and "may sue only for breach of contract." *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 939 (9th Cir. 2010) (quoting *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1121 (9th Cir. 1999)). Only where the licensee acts "outside of the scope of the license" by violating a condition of the license may the copyright owner bring a claim for copyright infringement; contractual terms that so limit the scope of the license are "conditions," and all other license terms are "covenants" enforceable only under contract law. *Id.* Stated simply, "breach of a *condition* is actionable under copyright law, but breach of a *covenant* is actionable only under contract law." *Take-Two Interactive Software, Inc. v. PlayerAuctions, Inc.*, No. 25-cv-01880-ODW (JDEX), 2025 WL 2459553, at *6 (C.D. Cal. Aug. 26, 2025)

In the motion, Itron urges that "Actian's claims allege only breaches of covenants in the license agreement, not conditions of the license itself." Mot. at 7. The Court accordingly must examine the EULA terms alleged in the complaint to have been violated by Itron to determine whether these are conditions that limit the scope of the license itself or mere covenants for which recovery is limited to an action for breach of contract. In making this determination, the Court applies California law, as informed by principles of federal copyright law and policy. *MDY Indus.*, 629 F.3d at 939 (explaining that courts "distinguish between conditions and covenants

United States District Court
Northern District of California

according to state contract law, to the extent consistent with federal copyright law and policy"); *see also* V14 EULA § 11.3 ("Any action related to this Agreement shall be governed by California law and controlling U.S. federal law[] . . . .").

"Under California law, a conditional obligation is one 'when the rights or duties of any party thereto depend upon the occurrence of an uncertain event.'" *Netbula, LLC v. Storage Tech. Corp.*, No. 06-cv-07391-MJJ, 2008 WL 228036, at *3 (N.D. Cal. Jan. 18, 2008) (quoting Cal. Civ. Code § 1434). A contract provision is a "condition" if it specifies "an act of a party that must be performed or an uncertain event that must happen before the contractual right accrues or the contractual duty arises." *Platt Pac., Inc. v. Andelson*, 6 Cal. 4th 307, 313 (1993). A contract provision is a "covenant," or "a contractual promise," if it provides that a party "act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." Kuney & Looper, Cal. Law of Contracts § 6.32 (1st ed. 2007); *accord* Restatement (Second) of Contracts § 2 (1981). In determining the nature and effect of a particular contractual provision, California law strongly favors covenants over conditions: "[S]tipulations in an agreement are not to be construed as conditions precedent unless such construction is required by clear, unambiguous language; and particularly so where a forfeiture would be involved." *Alpha Beta Food Markets v. Retail Clerks Union Local 770*, 45 Cal. 2d 764, 771 (1955).

While the Parties cursorily point to several provisions of the EULAs to argue the existence or non-existence of conditions cognizable under a copyright infringement claim, the primary point of disagreement between the Parties is whether the language contained in the EULAs describing the rights and obligations of the holder of a Server Edition License states a license condition:

> Conditioned on Your compliance with the terms and conditions of this Agreement, if You have properly purchased a license to the Server Edition, Actian grants to You a nonexclusive, nontransferable, non-sublicensable and revocable right to (i) use the Server Edition on a single Server; (ii) use the Client Software and Documentation in connection with Your use of the Server Edition; and (iii) with respect to a Server Edition Concurrent User License, permit a total number of Concurrent Users that is not greater than the User Count to simultaneously access and use the Server Edition.

V14 EULA § 2.1(a).

7

Acknowledging that Section 2.1(a) contains "generic language" reciting that the license is conditioned on using the Software on a single server, Itron urges that the Court "must refuse attempts to treat the entirety of an EULA as conditions on the license grant at its heart." Mot. at 10. While the Court is mindful of the Ninth Circuit's admonition against formalistic constructions of licenses that would otherwise permit copyright holders to transform all obligations in an agreement into conditions by "designat[ing] any disfavored conduct during software use as copyright infringement[] by purporting to condition the license on . . . abstention from the disfavored conduct," *MDY Indus.*, 629 F.3d at 941, that is not the case here. On the contrary, the plain meaning of this provision is that the suite of rights and obligations contained in the EULAs is conditioned upon the licensee using the Software on a single server for the licensee's own purposes, i.e., refraining from distributing copies of the Software. *See Take-Two*, 2025 WL 2459553, at *6. Rather than a covenant setting forth the Parties' respective rights and obligations, Section 2.1(a) reserves the right to distribute the Software, which is "[o]ne of the separate rights of copyright" and does not ordinarily attach merely upon obtaining a license. *Cohen v. Pictures Corp.*, 845 F.2d 851, 853 (9th Cir. 1988).

That said, while the Court has no trouble concluding that unlicensed distribution of the Software in violation of Section 2.1(a) could plausibly form the basis of a cognizable copyright claim, that is not the case here. Apart from conclusorily alleging unlicensed distribution, the complaint contains no factual allegations from which it could plausibly be inferred that Itron has infringed on Actian's copyright registrations. At the hearing, the Court expressed its concern that the complaint does not contain any particularized factual allegations in connection with the alleged breach of Section 2.1(a). *See* Tr. at 10:4–6. Actian responded only by identifying paragraph 46, *see id.* at 11:6–13, of the complaint, which states: "Itron has distributed copies of the Software to third parties, including, without limitation, its utility customers and users of the Itron Products, without a license to do so and in violation of the conditions in the EULAs prohibiting the distribution of copies." Compl. ¶ 46. This bare assertion is insufficient as a matter of law to demonstrate that Itron exceeded its authorization to use the Software on a single Server, use the Software in connection with its use of the Server Edition License, or permit a total number of

8

concurrent users less than or equal to its user account to use the license. *Cf.* V14 EULA § 2.1(a). The Court accordingly agrees with Itron that, as currently drafted, the complaint fails to state a claim for copyright infringement.

Because the complaint fails to allege direct copyright liability, Actian's secondary liability claims for vicarious and contributory infringement likewise fail at this stage. *See Hunley v. Instagram, LLC*, 73 F.4th 1060, 1075 (9th Cir. 2023); *MDY Indus.*, 629 F.3d at 941. Similarly, because the complaint contains no allegation that the asserted copyrights were registered in the Copyright Office within the earlier of three months after first publication of the work or one month after Actian learned of the alleged infringement, Actian has not established that it would be entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505 if it were to prevail on its copyright claims. *See* 17 U.S.C. § 412 (requiring registration as a prerequisite to statutory damages or attorneys' fees under the Copyright Act).

The Court accordingly GRANTS the motion to dismiss with respect to counts 2, 3, and 4 and the demand for fees and costs under the Copyright Act. Because at this early stage the Court cannot conclude that amendment would be futile, the Court grants the motion with leave to amend.

## B. Breach of Contract

Actian's first cause of action is for breach of contract based on, *inter alia*, "us[ing] the software in a commercial, revenue-generating deployment, in violation of Section 4.2," "violating provisions regarding the concurrent users of the Software" set forth in Section 2.1(a), and "refus[ing] to permit Actian to conduct an audit, in violation of [Section] 11.6(ii)." Compl. ¶ 56. While Actian relies on V14 EULA as an exemplar, it alleges that Itron's wrongful acts were in breach of multiple versions of the EULAs. *Id.* ¶ 54.

Itron argues that Actian fails to state a claim for breach of contract because the complaint lacks the specificity required to state a cognizable legal theory and does not plead sufficient facts to give Itron fair notice of what Actian's claim is. Mot. at 12–13. Specifically, Itron takes issue with Actian pleading breaches of several versions of the EULAs while only identifying the V14 EULA as an exemplar and then "hoping the Court will similarly assume that other, undescribed versions follow suit." *Id.* at 14–15. Actian responds that the facts alleged in the complaint

9

United States District Court
Northern District of California

provide sufficient notice of the claimed breaches and that, for pleading purposes, it is sufficient to use V14 EULA to "illustrate the 'similar' breached terms in each of the other EULAs." Opp. at 12.

"To state a cause of action for breach of contract, it is absolutely essential to plead the terms of the contract either in haec verba or according to legal effect." *Langan v. United Services Auto. Ass'n*, 69 F. Supp. 3d 965, 979 (N.D. Cal. 2014) (quoting *Twaite v. Allstate Ins. Co.*, 216 Cal. App. 3d 239, 252 (1989). In other words, the complaint "must at least allege the material terms of a specific contract, state that [the plaintiff] performed his own obligations under that contract or was excused from performing them, and state which obligations a defendant allegedly breached" so that the Court may "discern at least what material obligation of the contract the defendant allegedly breached." *Id.* at 979–80. Courts in the Ninth Circuit regularly dismiss breach of contract claims that "fail[] to identify the alleged contract between the parties, and the facts and circumstances surrounding the alleged breach of contract, it fails to give fair notice to defendants of the actions of which they are accused, in direct contravention of Rule 8." *Calip v. Tanigawa*, No. 15-cv-02111-MMC, 2017 WL 512780, at 4 (N.D. Cal. Feb. 8, 2017) (quoting *Rasidescu v. Midland Credit Mgmt., Inc.*, 435 F. Supp. 2d 1090, 1099 (S.D. Cal. 2006)).

While Itron somewhat overstates the deficiencies in the complaint, the Court agrees that as currently pleaded, the allegations in the complaint are too vague to provide sufficient notice on what EULAs and provisions have been breached. While Actian is not required at this stage to allege the terms of each EULA with precision or to disaggregate the alleged wrongful acts with reference to each EULA, the complaint must still generally put the defendant (and the Court) on notice as to what material obligations of each agreement have allegedly been breached. *See Langan*, 69 F. Supp. 3d at 979 (quoting *James River Ins. Co. v. DCMI, Inc.*, No. 11-cv-06345-WHA, 2012 WL 2873763 at *3 (N.D. Cal. July 12, 2012)). Because the complaint does not even generally allege what the terms of the other EULAs are or the extent to which they vary from V14 EULA, it is not possible to identify which specific contractual obligations Itron is accused of breaching. *See id.* at 980. Actian's failure to "allege any specific instance of any of these practices occurring," coupled with its omission of any explanation of its "basis for believing that

10

[Itron] engaged in these practices," falls short of even the liberal federal pleading standard by failing to allege the when and how of such breaches purportedly occurred. *Arena Restaurant & Lounge, LLC v. Southern Glazer's Wine & Spirits, LLC,* No. 17-cv-03805-LHK, 2018 WL 4334631, at *13 (N.D. Cal. Sept. 10, 2018).

The Court accordingly GRANTS the motion to dismiss with respect to count 1.  Because at this early stage the Court cannot conclude that amendment would be futile, the Court grants the motion with leave to amend.

## C. Negligence

Actian's fifth cause of action is for negligence based on "Itron's refusal to track users and use of the Software and its decision to distribute copies" to third parties outside of "its control and therefore not auditable by Actian."  Compl. ¶ 97.  According to Actian, Itron knew or should have known of the relevant terms of software distribution agreements as a software developer itself and accordingly "owed a duty of care to Actian to review and properly comply with the Agreements, and thereafter to report to Actian, pay Actian, and in all other respects comply with the Agreements, and in the alternative not to violate the Agreements." *Id.* ¶ 93.

Itron argues that Actian's negligence claim is barred by the economic loss rule, urging that the complaint "alleges nothing more than supposed duties duplicative of the EULA's obligations." Mot. at 18–19.  Itron also argues that, to the extent that Actian suggests the existence of special relationship between the Parties stemming from Itron's "exclusive control over software deployments," Compl. ¶ 95, the complaint merely alleges the existence of a clickwrap contract, which is "about as far form a 'special relationship' as you can get."  Mot. at 19.  Actian responds that it has "pled negligence that goes beyond mere non-compliance with the EULAs," apparently based on Itron itself being a software developer and accordingly being familiar with industry practices relating to software distribution agreements.  Opp. at 16.

The economic loss rule in California law "is designed to maintain a distinction between damage remedies for breach of contract and for tort." *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 873 (9th Cir. 2007).  Under this doctrine, a person "may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations." *Aas v. Sup. Ct.*,

11

United States District Court
Northern District of California

24 Cal. 4th 627, 643 (2000). "Instead, 'courts will generally enforce the breach of a contractual promise through contract law, except when the actions that constitute the breach violate a social policy that merits the imposition of tort remedies.'" *Id.* (quoting *Erlich v. Menezes*, 21 Cal. 4th 543, 552 (1999)). Stated differently, "a breach of contract is tortious only when some independent duty arising from tort law is violated." *Erlich*, 21 Cal. 4th at 554. While California law recognizes certain exceptions to the economic loss rule, those exceptions "require the breach of a tort duty apart from the general duty not to act negligently." *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1181 (C.D. Cal. 2009).

The Court agrees with Itron that Actian's negligence claim is squarely foreclosed by the economic loss rule, as the allegations giving rise to its negligence claim are identical to those giving rise to its claim for breach of contract. Indeed, it is revealing that Actian does not even bother to distinguish between the alleged wrongful acts forming the basis of each claim beyond a general, vague disclaimer that the list of wrongful acts is not exhaustive and is expected to be supplemented with discovery. And each of the alleged wrongful acts are wrongful only because they would breach Itron's obligations under the EULAs. *See* Compl. ¶¶ 93–99. Simply put, breach of a "duty of care . . . not to violate the Agreements" and "not to exploit the Software in any way prohibited by the Agreements" is not cognizable as a matter of California law. *Id.* ¶ 93. Nor is the Court persuaded by Actian's last-ditch effort to salvage its duplicative tort claim with its references to a "special duty" owed by Itron to Actian by virtue of being a software provider. On the contrary, this only confirms that the relationship between the parties is limited to a series of arms-length transactions that do no more than establish a general duty not to be negligent.

The Court accordingly GRANTS the motion to dismiss with respect to count 5. Unlike the case with Actian's copyright and contract claims, the defects to its negligence claim are fatal and cannot be cured by amendment. Because the crux of Actian's claim for negligence is simply that Itron failed to properly comply with the terms of the EULAs, the claim fails as a matter of law, and the Court concludes that amendment would be futile. The Court will thus grant the motion as to Actian's fifth claim without leave to amend.

12

**IV.    ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) The motion is GRANTED.

(2) Counts 1, 2, 3, and 4 are DISMISSED WITHOUT PREJUDICE.  Count 5 (negligence) is DISMISSED WITH PREJUDICE.

(3) Actian SHALL file an amended complaint within fourteen days of the date of this order.  Amendment is limited to curing the defects identified in this order.  No new Parties or claims may be added without first obtaining leave of the Court.

(4) This order terminates ECF No. 15.


Dated:  April 6, 2026

_____

BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

13